# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1007V
UNPUBLISHED

| | |
|---|---|
| DEBBIE MYERS,<br><br>       Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>       Respondent. | Chief Special Master Corcoran<br><br>Filed: March 22, 2023<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Missing Vaccine<br>Record; Site of Vaccination<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA) |

*Lawrence R. Cohan*, Saltz Mongeluzzi & Bendesky, Philadelphia, PA, for Petitioner.

*Parisa Tabbassian*, U.S. Department of Justice, Washington, DC, for Respondent.

## **FINDINGS OF FACT**[1]

On August 13, 2020, Debbie Myers filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving the influenza ("flu") vaccine on October 24, 2017. Petition at 1, ¶¶ 3, 16.

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

A dispute has arisen between the parties regarding one of the claim's Table elements. For the reasons discussed below, I find the flu vaccine was most likely administered intramuscularly in Petitioner's left deltoid on October 24, 2017, as alleged.

## I.   Relevant Procedural History

Within approximately one month of filing the Petition, Ms. Myers filed the affidavit and most medical records required by the Vaccine Act. Exhibits 1-6, filed Aug. 17, 2020, ECF No. 6; Exhibit 7, filed Sept. 15, 2020, ECF No. 8. Approximately four months later, she filed additional medical records. Exhibit 8, filed Jan. 18, 2021, ECF No. 15. Despite being granted subpoena authority on two separate occasions (ECF Nos. 22-23) and allowed an additional six months, Petitioner was unable to provide a vaccine record – a consent form or other documentation. Status Report, filed July 19, 2021, ECF No. 26. On November 10, 2021, the case was activated and assigned to the "Special Processing Unit" (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 27.

Over the subsequent eight months, Petitioner filed copies of the record requests she made when attempting to procure a vaccine record, documentation of her successful worker's compensation claim for her vaccine-related injury, a supplemental affidavit, and briefing. Exhibit 9, filed Mar. 11, 2022, ECF No. 31; Exhibits 10-12, filed May 24, 2022, ECF No. 33; Exhibit 13, filed July 7, 2022, ECF No. 36; Petitioner's Brief in Support of Petitioner's Position that She Received the Flu Vaccine as Alleged in her Petition ("Brief"), filed July 7, 2022, ECF No. 37. Emphasizing her significant efforts to obtain a vaccine record, the favorable results of her worker's compensation claim, and specific medical records entries (Brief at 1-2, 4-5, 8), Petitioner insists "there is ample evidence confirming a vaccination in her left arm on that date" (*id.* at 1).

In September 2022, Respondent suggested Petitioner check with the State of New Jersey Immunization Information System to determine if they had a record of Petitioner's vaccination. ECF No. 38. If not, he requested that I resolve the issue through a factual ruling, requesting time to file a response to Petitioner's brief. *Id.* at 2. On November 14, 2022, Petitioner filed a November 1st email response from the State of New Jersey and status report indicating no vaccine record was found. Exhibit 14, ECF No. 39; Status Report, ECF N0. 40.

On December 9, 2022, Respondent filed a status report indicating he expected the HHS review to be completed in January 2023, and a response to Petitioner's brief. Status Report, ECF No. 41; Respondent's Brief Regarding Vaccination Record ("Opp."), ECF No. 42. Arguing that the contemporaneously provided histories and successful worker's

compensation claim are not sufficient to establish vaccination, especially considering the requirement that this type of documentation be maintained (Opp. at 1-3), Respondent asks that I render a factual finding on the issue (*id.* at 4).

## II.     Issue

At issue is whether, despite the absence of a vaccine record, Petitioner received a flu vaccine intramuscularly in her left deltoid on October 24, 2017, as alleged.

## III.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events

when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV. Findings of Fact

I make these findings after a complete review of the record, including all medical records, affidavits, and additional evidence filed. Specifically, I base my findings on the following evidence:

- Prior to receiving the flu vaccine, Ms. Myers (then 47 years old) suffered common illnesses and conditions, but no prior left shoulder pain. Exhibit 6 at 6-76. In late 2016, she experienced chest pain determined to be caused by "[m]ild adenopathy and scattered pulmonary nodules." *Id.* at 9.

- In her affidavit, Petitioner alleges that she received the flu vaccine on October 24, 2017, at her place of employment – AtlantiCare Egg Harbor Township Hospital. Exhibit 7 at 2-3. Petitioner works as a medical assistant at the urgent care unit of the hospital, and as a massage therapist for another employer. *E.g.,* Exhibit 1 at 10; Exhibit 3 at 1.

- Approximately two weeks later (November 7th), Petitioner visited the worker's compensation unit complaining of pain in her left shoulder and some limited range of motion ("ROM"), after receiving a flu shot on October 24th. Exhibit 1 at 10. As a result of her injury, Petitioner reported difficulties performing her second job as a massage therapist. No swelling was observed, but Petitioner's ROM was assessed as being limited by 50 percent. *Id.* Petitioner was instructed to take Motrin, apply warm compresses, and return in three weeks. *Id.* at 10-11.

- Ten days later (now November 17th) Petitioner return to the worker's compensation unit for treatment of a possible allergic reaction to something she had eaten. Exhibit 1 at 7. At this visit, she again complained of continued left shoulder pain after receiving a flu shot on October 24th. In response to her statement that her primary care provider ("PCP") was unwilling to treat her vaccine reaction, Petitioner was provided with information regarding how to obtain another PCP if desired. *Id.*

- At her first physical therapy ("PT") session on November 28th, Petitioner again reported left shoulder pain after receiving the flu shot. Exhibit 3 at 1. In this record, the date of vaccination is listed as both October 24 and 25, 2017. Describing her left shoulder pain as radiating into her neck and finger, Petitioner rated its severity as between four and nine. *Id.*

- Later that same day, Petitioner returned to the worker's compensation unit, with the same complaint of left shoulder pain. Exhibit 1 at 5. Additional PT was authorized. *Id.* at 6.

- This same report of left shoulder pain following an October 2017 flu vaccine is repeated throughout the records from 23 PT sessions during December 2017 through February 2018. Exhibit 3 at 2-21.

- At her last visit to the worker's compensation unit on December 19, 2017, Petitioner was provided a referral to an orthopedist. Exhibit 1 at 3-4.

5

- When first seen by the orthopedist on December 21st, Petitioner again attributed her left shoulder pain to the flu vaccine she received in October 2017. Exhibit 2 at 12. Diagnosing Petitioner with "[l]eft shoulder cuff tendinitis and bursitis with referred pain into the back of the hand," the orthopedist opined that "within a reasonable degree of medical probability that [Petitioner's] left shoulder pain is causally related to the flu shot on October 24, 2017." *Id.* at 13.

- When Petitioner returned to the orthopedist on March 1, 2018, she indicated she "[wa]s still in a lot of pain." Exhibit 2 at 8. The orthopedist ordered an MRI. *Id.*

- The MRI, performed on March 14th, revealed minimal fluid in the subacromial subdeltoid bursa, evidence of possible capsulitis, an "[i]ncidentlly noted intramuscular lipoma of the interior deltoid," and an intact biceps tendon and cartilage. Exhibit 2 at 15.

- On March 29th, the orthopedist discussed the results of the MRI with Petitioner. Exhibit 2 at 6. Petitioner reported slight improvement over the last few weeks. *Id.*

- In the records from eight additional PT sessions in late March through April 2018, Petitioner again attributed her left shoulder pain to the October 24, 2017 flu vaccine she received. Exhibit 3 at 26-37. At her last session on April 25th, she was provided with a disability score of 40. *Id.* at 37.

- At her final orthopedic appointment on April 26th, Petitioner reported that she continued to experience significant pain, especially after repetitive arm movements such as when answering the phone. Exhibit 2 at 4. She was assessed as having full ROM and normal strength. *Id.* None of the information in these later medical records counters the orthopedist's earlier impression that Petitioner's left shoulder pain was vaccine-caused.

- Documentation for Petitioner's successful worker's compensation claim listed her as "developed pain in her left shoulder after receiving her annual flu shot." Exhibit 11 at 1 (all capital letters in the original).

- In her supplemental affidavit, Petitioner indicated that she received the flu vaccine as a requirement of her employment with a group of fellow

6

employees in a room containing tables – described as a small cafeteria, and three women administering vaccinations. Exhibit 13 at ¶¶ 2-6.

As a threshold matter, to prevail under the Vaccine Act a petitioner must establish that he "received a vaccine set forth in the Vaccine Injury Table." Section 11(c)(1)(A). Additionally, when alleging a Table SIRVA injury as in this case, a petitioner must show he received the vaccine intramuscularly in his injured upper arm/shoulder. 42 C.F.R. § 100.3(c)(10) (2017) (Qualifications and Aids to Interpretation for a Table SIRVA).

When presented with preponderant evidence – such as consistent references in contemporaneously created medical records and/or credible witness testimony - special masters have found sufficient proof of vaccination even in cases lacking a written contemporaneous record memorializing the event. *Hinton v. Sec'y of Health & Hum. Servs.,* No. 16-1140V, 2018 WL 3991001, at *10-11 (Fed. Cl. Spec. Mstr. Mar. 9, 2018); *Gambo v. Sec'y of Health & Hum. Servs.,* No. 13-0691V, 2014 WL 7739572, at *3-4 (Fed. Cl. Spec. Mstr. Dec. 18, 2014); *Lamberti v. Sec'y of Health & Hum. Servs.,* No. 99-0507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007). However, evidence has found to be insufficient in cases involving inconsistencies related to Petitioner's vaccination status and the events surrounding vaccination. *Matthews v. Sec'y of Health & Hum. Servs.,* No. 19-0414V, 2021 WL 4190265, at *6-7, 9 (Fed. Cl. Spec. Mstr. Aug. 19, 2021) *aff'd* 157 Fed. Cl. 777 (2021) (petitioner's reliance primarily on later notations of an allergic reaction).

In this case, the medical records show Petitioner consistently reported left shoulder pain following receipt of a flu vaccine on October 24, 2017. Her first report of pain occurred on November 7, 2017 - only two weeks post-vaccination. And she provided this same history in every medical record thereafter. Furthermore, the results of Petitioner's MRI – which showed a minimal amount of bursa fluid, and statements by her orthopedist that he believed her injury to have been vaccine-caused provide additional support for Petitioner's claim.

Additionally, the circumstances surrounding the administration of the flu vaccine, as described by Petitioner, rationally explain why a vaccine record would be missing. It is reasonable to conclude that, during such a large-scale vaccine administration event in a cafeteria temporarily converted for that purpose, some documentation was not properly completed. And, despite the lack of a vaccine record, Petitioner's employer – from whom she received the vaccine - did not contest her worker's compensation claim, further supporting the truth of her assertion.

7

Thus, given all of the foregoing, I find that despite the lack of a specific vaccine record, Petitioner has provided preponderant evidence establishing that she received a flu vaccine intramuscularly in her left deltoid on October 24, 2017, as alleged.

### V.     Scheduling Order

In light of my findings regarding vaccination, Petitioner should finalize a reasonable demand which she should convey, along with any needed supporting documentation, to Respondent at any time. Respondent should consider his tentative position in this case.

**Respondent shall file a status report indicating how he intends to proceed following my ruling by no later than Monday, April 24, 2023.**

**IT IS SO ORDERED.**

                                                                                 **s/Brian H. Corcoran**
                                                                                  Brian H. Corcoran
                                                                                  Chief Special Master